JUDGE SWEET

13 CIV    818

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEORGY USOV,

      Plaintiff,

              v.

MARC LAZAR and MARC LAZAR INC.,

      Defendants.

---

Case No.

**COMPLAINT**

RECEIVED
FEB - 5 2013
U.S.D.C. S.
CASHIERS

      Plaintiff Georgy Usov ("Usov" or "Plaintiff"), by his attorneys, The Roth Law

Firm, PLLC, hereby alleges the following against Defendants Marc Lazar ("Lazar") and

Marc Lazar Inc. ("ML Inc.") (collectively "Defendants"):

### PRELIMINARY STATEMENT

      1.      By this action, Plaintiff Usov seeks damages against Defendants arising

from Defendants' breach of contract and the duty of good faith and fair dealing.  In

addition, Usov seeks damages for Defendants' unjust enrichment from their own actions

as well as the return of property unjustly held by Defendants.

### PARTIES

      2.      Plaintiff Usov is a citizen of and resides in the Russian Federation.

      3.      Upon information and belief, Defendant Lazar is a citizen of the State of

New York.

      4.      Upon information and belief, Defendant ML Inc. is a corporation

organized and existing under the laws of the State of New York with its principal place of

business at 589 Fifth Avenue in the County of New York, State of New York.

## JURISDICTION AND VENUE

5.     This is a civil action seeking damages for, among other things, breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing as well as the return of personal property.

6.     Personal jurisdiction is proper in this Court because Defendant Lazar resides in the State of New York and both Defendants do business in the State of New York and transacted business in connection with the subject matter of this dispute in New York.

7.     This Court has subject matter jurisdiction over this action pursuant to diversity jurisdiction because the amount in controversy exceeds $75,000 and Plaintiff and Defendants have complete diversity of citizenship.

8.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## UNDERLYING FACTS

9.     In or about 2006, Pinnacle Trading Limited ("Pinnacle") was established. Plaintiff Usov is and has always been the sole shareholder of Pinnacle.

### The Large Diamond Collection

10.     In or about 2006, Defendants became custodian of 33 diamonds belonging to Pinnacle (the "Large Diamond Collection"). In exchange for holding the Large Diamond Collection, Defendants were granted thirty-three percent (33%) ownership interest in them. Defendants were to import the Large Diamond Collection into the United States, market them, and secure a buyer. It was further agreed that the proceeds of any sale of the diamonds was to be split in accordance with the ownership interests – that is, Defendants would receive one-third (1/3) of the sale proceeds and Pinnacle would

2

receive the remaining two thirds (2/3) of the proceeds. It was also agreed that Defendants

would provide, at their expense, the necessary insurance coverage for the Diamonds.

Defendants memorialized this arrangement by writing a note by hand on a Memorandum

from Pinnacle dated June 2006. A copy of that Memorandum is annexed hereto as

"Exhibit A."

      11.    In approximately 2007, Mervia Investments SA ("Mervia") was created

for Usov. Usov was and is the sole shareholder of Mervia.

      12.    In approximately 2007, Usov, as sole remaining shareholder of both

Pinnacle and Mervia, exercised his right to transfer Pinnacle's remaining assets to

Mervia. Pinnacle's assets included the ownership interests in the Large Diamond

Collection.

      13.    On or about August 23, 2011, Mervia's ownership interest in the Large

Diamond Collection was transferred to Usov. Defendants were informed of the transfer

and Defendant Lazar was asked to sign a Memorandum confirming that the interest in the

Large Diamond Collection was that of Usov. Thus, from August, 2011 to date, Usov

became the sole and exclusive owner of the Large Diamond Collection. In connection

with said understanding, a schedule was attached to the Memorandum ("Schedule A")

which listed all of the diamonds in which Usov maintained an ownership interest and

Defendants now possessed. A copy of the letter and Schedule A is annexed hereto as

"Exhibit B."

      14.    One of the 33 diamonds in the Large Diamond Collection was a 3.16

fancy purplish red, natural color, round brilliant cut diamond. In an attempt to increase

the sale potential of that diamond, the parties agreed that Defendants would recut the

stone into a 2.99 fancy purplish red, natural color, round brilliant cut diamond (hereinafter referred to as the "2.99 Carat Purplish-Red Round Brilliant Diamond").

**The Small Diamond Collection**

15.     In approximately 2002, Defendants were consigned five diamonds (the "Small Diamond Collection"), one of which was a 1.75 fancy intense purplish pink, natural color, round brilliant cut diamond (the "1.75 Carat Diamond"). It was understood and agreed that Defendants would attempt to sell the Small Diamond Collection and would pay the proceeds from the sale, less Defendants commission.

16.     In approximately 2010, Defendants returned four of the Small Diamond Collection. The only diamond in that collection that Defendants did not return was the 1.75 Carat Diamond.

17.     Thus, commencing October 19, 2010, Defendants had in their possession 34 diamonds belonging to Usov that consisted of the Large Diamond Collection (33 diamonds) and the 1.75 Carat Diamond.

**Defendants Sell Certain Diamonds**

18.     On or about March 25, 2012, Defendants informed Elena Harris, Usov's daughter, that they had sold a diamond from the Large Diamond Collection in their custody. Specifically, Defendants informed Harris that they had sold, from the Large Diamond Collection, a fancy grayish violet, natural color, round brilliant cut diamond, that weighed approximately 0.57 carats for approximately $125,000. Despite repeated requests, Defendants never provided any documentation or information confirming the sale, the sales date, the customer or the price of the transaction.

4

19. On or about April 25, 2012, Defendants informed Harris that they had sold two additional diamonds, one from the Large Diamond Collection and the 1.75 Carat Diamond. Specifically, Defendants informed Harris that they had sold the 2.99 Carat Purplish-Red Round Brilliant Diamond(from the Large Collection) as well as the 1.75 Carat Diamond (the remaining piece from the Small Collection) for a total price of approximately $5,000,000; $4.65 million for the 2.99 Carat Purplish-Red Round Brilliant Diamond and $350,000 for the 1.75 Carat Diamond.

20. Because the 2.99 Carat Purplish-Red Round Brilliant Diamond was from the Large Diamond Collection, Defendants were obligated to pay to Usov two-thirds of the proceeds, or $3.096 million. Defendants were also obligated to pay Usov the entire proceeds of the 1.75 Carat Diamond or $350,000

21. Harris repeatedly asked Lazar to provide payment to Usov. He refused to do so. Nor would he even provide Harris any documents or information about the sales whatsoever, including the amount of the actual sales, the date of the sales, the customer or provide an invoice, bill, sales slip, memorandum or any other documentation confirming the sale.

22. Through June 16, 2012, Usov attempted to contact Lazar directly and left messages on his voicemail for Lazar to return his calls. Lazar never did so.

23. On or about July 23, 2012, October 17, 2012, and October 22, 2012, Harris met with Lazar, in further attempts to obtain the proceeds of the sales of said diamonds. Because of Lazar's failure to pay for the diamonds that were sold, Harris not only demanded that Lazar pay Usov, but also that Lazar either deliver to her the pieces from the Large Diamond Collection, or make immediate payment of two thirds of the

diamonds that he failed to sell and failed to return. At those meetings, Harris also requested that Lazar obtain an independent assessment of the value of the remaining diamonds through an appraiser or a diamond house.

24.     Lazar continued to stall Harris from the date of the sales to date and has failed to pay Usov for any of the diamonds that were sold pursuant to the parties' agreement.

25.     Because Harris believed Lazar was simply stalling, she arranged to meet with Lazar to value the pieces that were still in his possession. During a meeting on or about October 17, 2012, the two, with the assistance of others, derived a valuation for the remaining pieces in inventory. An actual spreadsheet was prepared by Lazar and presented to Harris. The spreadsheet set forth the Large Diamond Collection in Defendants' custody as well as the value of each diamond and how much Defendants owed to Usov based on those valuations. The total owed on those diamonds was approximately $3.5 million . A copy of the spreadsheet *based on Lazar's valuations* is annexed hereto as "Exhibit C."

26.     On or about October 22, 2012, Lazar and Harris agreed that what Defendants owed to Usov was approximately $3.5 million. . At the meeting, Harris again demanded, on behalf of Usov, that Defendants pay Usov the proceeds due from the sale of the diamonds as well as two-thirds of the Large Diamond Collection.

27.     Defendants have refused to pay Usov to date, despite repeated demands. Defendants have also refused to turn over any of the remaining diamonds from the Large Diamond Collection that remained unsold and in the possession of Defendants.

6

28.     Upon information and belief, Defendants continue to show the Large
Diamond Collection in industry shows, in an effort to build name recognition, a stronger
reputation and develop substantial goodwill even though Usov, through Harris, has
repeatedly asked for the return of the diamonds.

## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

29.     Usov repeats and realleges the above paragraphs as if fully stated herein.

30.     Usov and Defendants entered into an agreement whereby Defendants
owned thirty-three percent (33%) of the Large Diamond Collection and Usov owned the
remaining sixty-six percent (66%).

31.     Defendants have refused to pay any monies to Usov or to turn over any
inventory, thereby breaching the agreement between the parties.

32.     As a result of Defendants' breach, Usov has suffered and will continue to
suffer damages in an amount thus far not determined, but believed to be at least
$7,000,000 plus interest, costs, attorneys' fees and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

33.     Usov repeats and realleges the above paragraphs as if fully stated herein.

34.     Defendants were entrusted with numerous diamonds with the
understanding that they would only own one-third, with the remaining two-thirds owned
by Usov.

35.     Despite demands by Usov for the Large Diamond Collection as well as for
the sale proceeds for those diamonds that have been sold, Defendants have failed to
turnover such and continue to hold custody over property and money belonging to Usov.

7

36.     Defendants have been unjustly enriched by retaining sales proceeds and diamonds that rightfully belong to Usov.

37.     As a result of the Defendants' actions, Usov has suffered and will continue to suffer damages in an amount thus far not determined, but believed to be at least $7,000,000 plus interest, costs, attorneys' fees and punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

38.     Usov repeats and realleges the above paragraphs as if fully stated herein.

39.     By virtue of the foregoing conduct, the Defendants have acted in bad faith in performing their duty of good faith and fair dealing by failing to pay Usov or turnover of inventory that is in Defendants' custody.

40.     Accordingly, Defendants have breached the implied covenant of good faith and fair dealing.

41.     As a result of Defendants' breach, Usov has suffered and will continue to suffer damages in an amount thus far not determined, but believed to be at least $7,000,000 plus interest, costs, attorneys' fees and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
## REPLEVIN

42.     Usov repeats and realleges the above paragraphs as if fully stated herein.

43.     Defendants were entrusted with numerous diamonds with the understanding that they only own one-third of them, and the remaining two-thirds belonging to, now, Usov.

8

44.    Despite demands by Usov for the diamonds that rightfully belong to him, Defendants have failed to turnover such and continue to hold custody over property belonging to Usov.

45.    Wherefore, Usov seeks the assistance of the Court in requiring Defendants to turnover to Usov what is rightfully his.

## AS AND FOR A FIFTH CAUSE OF ACTION
## CONVERSION

46.    Usov repeats and realleges the above paragraphs as if fully stated herein.

47.    Defendants were entrusted with numerous diamonds with the understanding that they only own one-third of them, the remaining two-thirds belonging to, now, Usov.

48.    Despite demands by Usov for the diamonds that rightfully belong to him, Defendants have failed to turnover such and continue to hold custody over property belonging to Usov.

49.    Wherefore, Usov seeks the assistance of the Court in requiring Defendants to turnover to Usov what is rightfully his.

**WHEREFORE**, Plaintiff respectfully seeks Judgment in this matter as indicated in the Causes of Action herein, together with any further relief that the Court deems just and proper.

DATED:     New York, New York
           January 30, 2013

                                    THE ROTH LAW FIRM, PLLC

                                    By:_____
                                         Richard A. Roth, Esq.
                                    295 Madison Avenue, 22nd Floor
                                    New York, New York 10017
                                    Tel: (212) 542-8882
                                    *Attorneys for Plaintiff Georgy Usov*

# EXHIBIT A

# PINNACLE TRADING LIMITED

Telephone +1 642 497 3891
Fax       +1 642 497 3891

Spencer House
The Valley
Anguilla
British West Indies

JUNE 2006

Marc Lazar, Inc.
589 5ᵗʰ Ave.
Suite 1155
N.Y. New York 10017

MEMO

| | | | | | | |
|---|---|---|---|---|---|---|
| 3.16 | Round Brilliant | pu/rd | 0.53 | Emerald cut | rd | |
| 0.41 | Pearshape | pu/rd | 2.04 | Marquise | pk | |
| 1.10 | Heartshape | pu/pk | 1.00 | Round Brilliant | pu/pk | |
| 0.60 | Round Brilliant | pu/pk | 0.50 | Round Brilliant | pu/pk | |
| 0.55 | Round Brilliant | pu | 0.34 | Round Brilliant | pk/pu | |
| 0.80 | Pearshape | gy/y/gn | 1.59 | Round Brilliant | y | |
| 0.72 | Round Brilliant | o/y | 1.68 | Heptagon Brilliant | gy/v | |
| 0.57 | Round Brilliant | gy/v | 1.04 | Pearshape | bl | |
| 0.51 | Pearshape | bl | 1.19 | Pearshape | o | |
| 1.13 | Pearshape | o | 0.90 | Round Brilliant | o | |
| 0.83 | Rectangular S/C | y/o | 1.13 | Round Brilliant | o | |
| 0.82 | Round Brilliant | o | 0.63 | Round Brilliant | o | |
| 2.19 | Round Brilliant | bn/pk/o | 2.06 | Round Brilliant | bn/pk/o | |
| 2.01 | Marquise | w | 2.08 | Marquise | w | |
| 2.10 | Pearshape | gy | 1.07 | Round Brilliant | gy | |
| 3.43 | Round Brilliant | bk | 0.83 | Round Brilliant | bn | |
| 0.58 | Star | w | | | | |

*Marc Lazar*

Received *[signature]*

*Percentage of ownership: Marc Lazar 33 (thirty three) & Pinnacle Trading Limited 66 (sixty six)*

Incorporated and registered in Anguilla, British West Indies under number: 2069826

Bank Account with: Verwaltungs-und Privat Bank, Aeulestrasse 6
FL-9490 Vaduz, Liechtenstein
SWIFT/BIC: VPBLI2X
USD Account: IBAN No: LI96 0880 5003 4511 0001 0
EUR Account: IBAN No: LI15 0880 5003 4511 0001 3

# EXHIBIT B

**MARC LAZAR**
RARE · WHITE · COLOR · DIAMONDS

August 23, 2011

To Whom It May Concern:

As Informed by Mr. David Dawes, I acknowledge that the arrangement of the stock Itemized In Schedule A is being transferred from Mervia Investments SA to Georgy Usov.

All previous conditions apply.

Marc Lazar
*President*
Marc Lazar Inc.

*acknowledged*
*Georgy Usov*

*Agreed*
*Director Mervia Investments SA.*

589 Fifth Ave. Ste 1155  NYC 10017  T: 212 840 0089  F: 212 764 6042  diamonds@marclazar.com  www.marclazar.com

"Schedule A"

| | | | |
|---|---|---|---|
| 1. | 0.53 | EM | Fancy Purplish Red |
| 2. | 0.55 | RB | Fancy *Pink Purple |
| 3. | 0.34 | RB | Fancy *Intense Purple |
| 4. | 0.57 | RB | Fancy Dk. Gy Violet |
| 5. | 0.51 | PS | Fancy Deep Blue |
| 6. | 0.50 | RB | Fancy vivid purp-pink |
| 7. | 0.83 | EM | Fancy int Yel orange |
| 8. | 0.80 | PS | Fancy Gy yel green |
| 9. | 0.72 | RB | Fancy vivid orangy yel |
| 10. | 0.83 | RB | Fan dk orangy brown |
| 11. | 0.63 | RB | Fancy Deep brn orange |
| 12. | 0.83 | RB | Fancy brown |
| 15. | 0.41 | PS | Fancy *purplish red |
| 16. | 1.10 | HT | Fancy int pink purple |
| 17. | 1.00 | RB | Fancy Intense* purp pink |
| 18. | 1.59 | RB | Fancy vivid yellow |
| 19. | 1.68 | HP | Fancy deep gy violet |
| 20. | 1.19 | PS | Fancy int orange (yel*) |
| 21. | 0.90 | RB | Fancy int orange |
| 22. | 1.13 | RB | Fancy deep orange |
| 23. | 2.10 | PS | Fancy dark grey |
| 24. | 1.07 | RB | Fancy grey |
| 25. | 3.43 | RB | Fancy Black |
| 26. | 0.54 | Oval | Fancy deep purple pink |
| 27. | 1.13 | PS | Fancy vivid orange |
| 28. | 2.19 | RB | Fancy pink brown |
| 29. | 2.06 | RB | Fancy pink brown |
| 30. | 2.01 | MQ | Fancy white/f |
| 31. | 2.08 | MQ | Fancy white/f |
| 32. | 1.75 | RB | Fancy intense pink |
| 33. | 3.41 | PS | Fancy Pink |
| 34. | 1.49 | HS | Fancy Vivid Yel Orange |
| 35. | 1.09/ 0.94 | EM | Intense pink/yellow ring |

36.   .58   Fancy Pink orange brown
37.   .25   yellow Fgs

2/3

# EXHIBIT C

| small | collection | | asking per carat | per item |
|---|---|---|---|---|
| 0.53 | EM | Fancy Purplish Red | $1,000,000.00 | $530,000.00 |
| 0.55 | RB | Fancy Intense Pink Purple | $157,500.00 | $86,625.00 |
| 0.34 | RB | Fancy Intense Purple | $150,000.00 | |
| 0.57 | RB | Fancy Dk. Gy Violet/ sold April 2012, still outstanding | $125,000.00 | $71,250.00 |
| 0.51 | PS | Fancy Deep Blue | $400,000.00 | $204,000.00 |
| 0.5 | RB | Fancy Vivid Purp Pink | $350,000.00 | $175,000.00 |
| 0.83 | EM | Fancy Int Yel Orange | $30,000.00 | $24,900.00 |
| 0.8 | PS | Fan. Gy Yel Green | $28,500.00 | $22,800.00 |
| 0.72 | RB | Fancy Vivid Or Yellow | $30,000.00 | $21,600.00 |
| 0.83 | RB | Fancy *Dark Orangy Brn | $15,000.00 | $12,450.00 |
| 0.63 | RB | Fancy Deep Brn Orange | $20,000.00 | $12,600.00 |
| 0.83 | RB | Fancy Deep Brown | $1,350.00 | $1,120.50 |
| 0.58 | Star | Fancy Dark Orangy Brown | $8,000.00 | $4,640.00 |
| 0.25 | Star | Yell tips | $8,000.00 | $2,000.00 |
| 0.54 | Oval | Fancy Deep.Purp Pink, VS2 | $67,500.00 | $36,450.00 |
| | | total | | $1,205,435.50 |
| | | 2/3 share | | $803,623.67 |
| SINGLES | | | | |
| 0.41 | PS | Fancy Vivid Purplish Pink (*Red) | $500,000.00 | $205,000.00 |
| 2.03 | MQ | Fancy Intense Pink | SOLD | |
| 1.1 | HT | Fancy Int. Pk Purple | $250,000.00 | $275,000.00 |
| 1 | RB | Fancy Vivid Purp Pink | $450,000.00 | $450,000.00 |
| 1.59 | RB | Fancy Vivid Yellow | $58,000.00 | $92,220.00 |
| 1.68 | HP | Fancy Deep Gy Violet | $952,380.95 | $1,600,000.00 |

| | | SOLD | | |
|---|---|---|---|---|
| 1.04 PS | Fancy int Blue | SOLD | | |
| 1.19 PS | Fancy Yellow Orange (*Int) | | $155,000.00 | $184,450.00 |
| 0.9 RB | Fancy Intense Orange | | $90,000.00 | $81,000.00 |
| 1.13 RB | Fancy Deep Brownish yellow orange | | $20,000.00 | $22,600.00 |
| 2.1 PS | Fancy Dark Gray | | $40,500.00 | $85,050.00 |
| 1.07 RB | Fancy Gray | | $40,500.00 | $43,335.00 |
| 3.43 RB | Fancy Black | | $5,000.00 | $17,150.00 |
| 0.54 Oval | | TBD | | |
| 1.13 PS | Fancy Vivid Orange | | $350,000.00 | $395,500.00 |
| 2.06 RB | Fancy Pink Brown | | $75,000.00 | $154,500.00 |
| 2.01 MQ | Fancy White/ F | | $21,000.00 | $42,210.00 |
| 2.08 MQ | Fancy White/ F | | $21,000.00 | $43,680.00 |
| 2.19 RB | Fancy Pink Brown | | $75,000.00 | $164,250.00 |
| | | total | | $3,855,945.00 |
| | | 2/3 share | | $2,570,630.00 |
| | | TOTAL, 2/3 SHARE | | $3,374,253.67 |