UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

GREGORY USOV,

                    Plaintiff,

          - against -

MARC LAZAR and MARC LAZAR INC.,

                    Defendants.

------------------------------------X

13 Civ. 818 (RWS)

OPINION

A P P E A R A N C E S:


          Attorneys for Plaintiff GREGORY USOV

          THE ROTH LAW FIRM, P.L.L.C.
          295 Madison Avenue, 22nd Floor
          New York, New York 10017
          By:  Richard A. Roth, Esq.


          Attorneys for Defendants Marc Lazar and Marc Lazar
             Inc.

          ROBINSON BROG LEINWAND
          GREENE GENOVESE & GLUCK P.C.
          875 Third Avenue, 9th Floor
          New York, New York 10022
          By:  David C. Burger, Esq.
               Michael A. Eisenberg, Esq.

**Sweet, D.J.**

Defendants Marc Lazar ("Mr. Lazar") and Marc Lazar Inc. ("Lazar Inc.") (collectively, the "Defendants") have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint filed by Plaintiff Gregory Usov ("Plaintiff" or "Mr. Usov"). Plaintiff moves to compel discovery prior to the preliminary conference on this matter set for September 18, 2013. For the reasons set forth below, Defendants' Motion to Dismiss is denied in part and granted in part and Plaintiff's Motion to Compel Discovery is granted.

## I. *PRIOR PROCEEDINGS*

The Plaintiff initiated these actions against Defendants Mr. Lazar and Lazar Inc. with the filing of the Summons and Complaint on February 5, 2013. Plaintiff's Complaint alleges that Plaintiff and Defendants entered into an agreement whereby Plaintiff owned 66% of a certain diamond collection (the "large diamond collection" or "large collection") and that Defendants breached this agreement by refusing to pay profits of any sales of diamonds in the large collection or by turning over the remaining inventory, and that as a result of this breach, Plaintiff has and will continue to suffer damages from Defendants' unjust enrichment in retaining the large collection

1

and profits owed.  (*See* Complaint ¶¶ 29-36.)  Plaintiff seeks 66% of all profits from any diamonds of the large collection that Defendants have already sold as well as compensation for 66% of the remainder of the collection, punitive damages and attorneys' fees or, in the alternative, return of the remainder of the large diamond collection.  (*See* id.)

On April 1, 2013, Defendants filed a Motion to Dismiss Plaintiff's complaint in its entirety.  This motion was marked fully submitted on May 22, 2013.

On June 4, 2013, Plaintiff filed a Motion to Compel discovery.  This motion was marked fully submitted on June 14, 2013.

## II.  BACKGROUND

In 2006, Pinnacle Trading Limited ("Pinnacle") was established.  (Compl. ¶ 9.)  Mr. Usov was the sole shareholder of Pinnacle.  (*Id.*)  In or about 2006, Defendants, in exchange for holding the large diamond collection at issue and providing insurance coverage, were granted 33% ownership interest in the collection.  (*See* Compl. ¶ 10.) In approximately 2007, Mr. Usov created Mervia Investments SA ("Mervia"), of which Mr. Usov was the sole shareholder, and transferred Pinnacle's assets, including the interests in the large diamond collection, to

2

Mervia.  (Compl. ¶ 12.) On or about August 23, 2011, Mr. Lazar
signed a memorandum confirming that the 66% interest in the
large diamond collection was transferred from Mervia to Mr. Usov
personally.  (Compl. ¶ 13.)  Mr. Usov attached a schedule to
this memorandum which confirmed a list of all the diamonds in
the large collection. (*Id.*)

     In 2002, Mr. Usov cosigned five diamonds (the "small
diamond collection") to Defendants, which Defendants agreed to
sell and deliver all proceeds of any sales directly to Mr. Usov.
(*See* Compl. ¶ 15.)  In 2010, Defendants returned four diamonds
of the small collection but kept the fifth diamond, a 1.75 Carat
diamond.  (Compl. ¶ 16.)  By October 19, 2010, Defendants
therefore had in their possession 34 diamonds belonging to Mr.
Usov, including the large diamond collection consisting of 33
diamonds and the 1.75 Carat diamond remaining from the small
diamond collection.  (Compl. ¶ 17.)

     On March 25, 2012, Defendants informed Elena Harris ("Ms.
Harris"), Mr. Usov's daughter, that they had sold a diamond from
the large collection for approximately $125,000.  (Compl. ¶ 18.)
Despite requests, Defendants did not provide any documentation
or information concerning the sale, the customer, or the price
of the transaction. (*Id.*)  On or about April 25, 2012,
Defendants informed Ms. Harris that they had sold two additional

3

diamonds, one from the large diamond collection and the 1.75 Carat diamond from the small collection, for $4.65 million and $350,000, respectively. (Compl. ¶ 19.) Based on the relevant agreements, Defendants were obligated to pay to Mr. Usov two-thirds of the proceeds of the diamond sold from the large diamond collection, or $3.09 million, and the entire proceeds of the sale of the 1.75 Carat diamond from the small collection. Defendants did not pay any profits from these diamond sales to Plaintiff, and continued to refuse to provide Ms. Harris with any documentation or information about these sales whatsoever. (Compl. ¶ 21.) During this time through June 16, 2012, Mr. Usov alleges that he made several attempts to contact Mr. Lazar directly regarding these profits owed, including leaving messages on his voicemail, and that Mr. Lazar never responded to any of his attempts. (Compl. ¶ 22.)

On or about July 23, 2012, October 17, 2012 and October 22, 2012, Ms. Harris met with Mr. Lazar in further attempts to obtain proceeds of the sale of the diamonds and to deliver the remaining diamonds, and additionally to obtain an independent assessment of the value of the remaining diamonds in the large collection.  (Compl. ¶ 23.) On October 17, 2012, Ms. Harris and Mr. Lazar, with the assistance of others, derived a valuation for the remaining pieces in inventory of the large diamond

4

collection, calculating the total owed by Mr. Lazar to Plaintiff
at $3.5 million, in addition to the profits from the diamonds
already sold.  (Compl. ¶ 26.)  To date, Defendants have not paid
Plaintiff any profits from the diamonds sold, or returned any of
the remaining diamonds from the large collection still in
Defendants' possession.  (Compl. ¶ 27.)  Plaintiff further
alleges that Defendants continue to display the large diamond
collection in industry shows in an effort to build name
recognition and reputation despite Mr. Usov's repeated requests
that the diamonds, or profits, be returned.  (Compl. ¶ 28.)

    In response, Defendants assert that Lazar Inc. is the sole
owner of the large diamond collection, having purchased the
large diamond collection from Andre Runte ("Mr. Runte") on April
7, 2005.  (Mem. at 2.)  In contrast, Ms. Harris contends that in
or around 1997, Ms. Harris's then husband, Harvey Harris ("Mr.
Harris"), entered into an agreement with Mr. Runte regarding the
large diamond collection.  (Affidavit of Elana Harris ("Harris
Aff."); ¶ 6.)  After Mr. Runte brought arbitration proceedings
against Mr. Harris regarding the large diamond collection in
1997, which resulted in a judgment against Mr. Harris, Mr.
Harris and Mr. Lazar agreed to purchase the stones from Mr.
Runte with money from Mr. Harris covering two-thirds of the
purchase price and Mr. Lazar covering one-third.  (*Id.* ¶¶ 7-8.)

5

During this time, Mr. Harris had terminal Leukemia, and therefore asked Mr. Lazar to act for him concerning the purchase of the large collection.  (*Id.* ¶ 9.)

In or about 2006, because of his impending death, Mr. Harris transferred his 66% ownership interest in the large diamond collection to Pinnacle, which Defendants acknowledged in an agreement between Mr. Lazar and Pinnacle in 2006.  (*Id.* ¶ 12.) Plaintiff therefore asserts that in signing this agreement, and the subsequent agreements transferring Pinnacle's interest to Mervia and then to Mr. Usov personally, Mr. Lazar acknowledged Mr. Usov's two-third interest in the large diamond collection.  (*Id.* ¶ 13.)  In addition, Plaintiff alleges that Mr. Lazar partially performed under the contract in that upon selling two of the diamonds in the large collection, Mr. Lazar, pursuant to the 2006 contract, wired money for two-thirds of the proceeds of both sales to Pinnacle.  (*Id.* at 14.)

Independently, Ms. Harris also alleges that she had numerous meetings with Mr. Lazar where he confirmed that he was personally obligated to Plaintiff for two-thirds of the large diamond collection. (*Id.* at 15.)  As evidence of Mr. Lazar's intentions, Ms. Harris points to: (1) Mr. Lazar telling her the prices for all diamonds he sold from the large collection, and (2) a conversation with Mr. Lazar on July 23, 2012, which Ms.

6

Harris allegedly recorded, during which Mr. Lazar acknowledged that Plaintiff was owed two-thirds of any profits on diamonds sold from the large collection.  (*Id.* ¶¶ 17-24.)

On May 9, 2013, Plaintiff served a First Request for Documents on Defendants, which Defendants rejected.  Defendants instead responded that discovery should be stayed pending the instant pre-answer Motion to Dismiss.

### III.  STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

7

Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U .S. at 570. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555).

The Court may consider outside documents that are integral to the complaint, regardless whether attached to the complaint, so long as the pleader has notice of them or refers to them. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001); *Schnall v. Marine Midland Bank,* 225 F.3d 263, 266 (2d Cir.2000). "[W]hile courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." *Garcia v. Lewis,* No. 05 Civ. 1153(SAS), 2005 WL 1423253, *3, 2005 U.S. Dist. LEXIS 11955, at *10 (S.D.N.Y. June 16, 2005). When ruling on a motion to dismiss, the Court may also take judicial notice of copies of documents attached to the complaint. *Calcutti v. SBU, Inc.,* 224 F.Supp.2d 691, 696 (S.D.N.Y.2002).

8

IV. **PLAINTIFF'S BREACH OF CONTRACT CLAIM IS ALLOWED AS PERTAINING TO LAZAR INC., and DISMISSED AS TO MR. LAZAR IN HIS INDIVIDUAL CAPACITY**

In order to prevail on a breach of contract claim under New York law, a plaintiff must prove "(1) the existence of a contract; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *United Resource Recovery Corp. v. Ramko Venture Mgmt.*, 584 F.Supp.2d 645, 652 (S.D.N.Y.2008). The burden rests upon the Plaintiff to prove these elements by a preponderance of the evidence. *See e.g., Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 542 (2d Cir.1989).

**A. Marc Lazar Inc.**

Defendants contend that Plaintiff's breach of contract claim fails because Plaintiff does not establish any ownership of the diamonds, and to the contrary, documentary evidence shows Lazar, Inc. as the sole owner of the large collection. (Declaration of David C. Burger ("Burger Decl."); Exhibits B & C.)

However, Plaintiff's claim arises from two documents showing a contract between Mr. Lazar and Mr. Usov establishing ownership interest in the large diamond collection: first, an agreement in June of 2006 whereby Mr. Lazar signed his name, on Lazar Inc. letterhead, documenting the large diamond collection

9

and establishing ownership in Pinnacle Trading Limited at 66%
(Burger Decl. Exhibit A); and second, an agreement on August 23,
2011, signed by Mr. Lazar as President of Lazar Inc., where Mr.
Lazar acknowledged that a 66% ownership interest in the large
diamond collection was transferred from Mervia to Mr. Usov
personally (Burger Decl. Exhibit A).  Both agreements are
sufficient at this stage to establish the existence of the
parties' intent to create Plaintiff's 66% ownership interest in
the large diamond collection.[1]   *See Tractebel Energy Marketing,
Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 97 (2d Cir.
2007) ("The existence of a contract may be established through
the conduct of the parties recognizing the contract" and the
"totality of all acts of the parties") (internal citations
omitted).

In addition, Plaintiff asserts that Mr. Lazar personally
reassured Ms. Harris that Mr. Usov was entitled to 66% of any

---

[1] Defendants point to a purported contract between Defendants and Mr. Runte
establishing a purchase agreement whereby Defendants purchased the large
diamond collection from Mr. Runte in August of 2005 (the document is signed
by Mr. Runte but not by Mr. Lazar).   Defendants argue that this document
conclusively demonstrates their sole ownership in the large collection.
Plaintiff contends first that this is an unexecuted document that predates
the current relationship between the parties, as evidenced by the later
contracts, and second that the document should not be considered because it
was not attached to the Complaint.  The Court declines to reach either
whether the document is executed and valid, or whether it should be
considered, as the document in question predates the 2006 and later
contracts, which are sufficient at this stage to establish an intent between
Defendants and Mr. Usov to create a 66% ownership interest in the large
diamond collection by Plaintiff.

proceeds of diamonds sold from the large collection and that Mr. Lazar would in fact pay Mr. Usov these profits.   Mr. Lazar also allegedly partially performed under the contract by wiring money after 2006 for two-thirds of the proceeds of two diamonds sold from the large collection.  (Harris Aff. ¶¶ 17-24.)

Despite these documents and Mr. Lazar's apparent assurances, Mr. Lazar has not, in his personal capacity or through Lazar Inc., paid Plaintiff for any of the diamonds sold from the large collection, or for the remainder of the collection still in Defendants' possession.  Accordingly, based upon Plaintiff's allegations and the documents before the Court at the motion to dismiss phase, Plaintiff has established a valid breach of contract claim.

### B. Marc Lazar Individually

"It is well established in New York that an officer of a corporation is not individually liable for the contractual obligations of that corporation absent a clear intent to create individual liability." *Rotter v. Institutional Brokerage Corp.*, 1994 U.S. Dist. LEXIS 10157, 5-6 (S.D.N.Y. July 22, 1994) (*citing Puma Indus. Consulting v. Daal Associates, Inc.*, 808 F.2d 982, 986 (2d Cir. 1987).  Here, the agreements establishing a contract include a memorandum addressed to Marc Lazar, Inc. and a letter signed by Marc Lazar as President of Marc Lazar

Inc. The agreements are thus between Plaintiff and Lazar Inc., and do not evidence an intent to include Mr. Lazar in his individual capacity. Ms. Harris's allegations upon information and belief that Mr. Lazar signed these agreements in his personal capacity, and that he partially performed under the contract in his personal capacity, are insufficient to establish that Mr. Lazar intended to create individual liability. (*See* Harris Aff. ¶¶ 9-10, 14.)[2]

Nor are Ms. Harris's allegations sufficient to establish the elements necessary for the Court to "pierce the corporate veil." To pierce the corporate veil, the requesting party must prove: "(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997). In establishing the first element, Courts have looked to factors such as where the individual in question "exercised considerable

---

[2] Further, "Personal liability will be imposed only if the Plaintiff shows that the officer or employee acted outside the scope of his employment by committing an independent tort of by pursuing a personal interest." *Tsegaye v. Impol Aluminum Corp.*, 2003 U.S. Dist. LEXIS 1397, *27 (S.D.N.Y. Jan. 30, 2003). Plaintiff, as discussed, has not pled sufficient facts establishing that Mr. Lazar acted outside the scope of his employment or that he pursued a personal interest.

authority over [the corporation] ... to the point of completely
disregarding the corporate form and acting as though [its]
assets were his alone to manage and distribute." *Id.* at 1051
(*citing Lally v. Catskills Airways Inc.*, 603 N.Y.S.2d 619, 621
(3d Dep't 1993)).  Plaintiff's allegations that Mr. Lazar owns
Lazar Inc., is the president, and was the only individual who
dealt with the purchases and sales of the large diamond
collection are insufficient to establish the requisite authority
or domination over the company by Mr. Lazar necessary to "pierce
the corporate veil."

Plaintiff's claim for breach of contract is therefore
dismissed as to Mr. Lazar in his individual capacity.

## V. *PLAINTIFF ADEQUATELY ALLEGES UNJUST ENRICHMENT AS TO MARC LAZAR INC. BUT FAILS TO STATE A CLAIM AGAINST MR. LAZAR INDIVIDUALLY*

Under New York law, a claim of unjust enrichment "requires
simply an allegation that (1) the defendant was enriched, (2)
the enrichment was at the plaintiff's expense, and (3) the
defendant's retention of the benefit would be unjust." *M'Baye v.
World Boxing Ass'n.,* No. 05-9581(DC), 2006 WL 2090081, at *5
(S.D.N.Y. July 28, 2006). "The notion of unjust enrichment
applies where there is no contract between the parties."
*Maryland Cas. Co. v. W.R. Grace & Co.,* 218 F.3d 204, 212 (2d
Cir. 2000). Thus, generally, quasi-contractual relief, such as

13

unjust enrichment, is not permitted when an express agreement exists that governs the dispute between the parties. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388 (1987) (citations omitted).

However, "[w]hile a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories." *Singer v. Xipto Inc.,* --- F.Supp.2d ----, 2012 WL 1071274, at *8 (S.D.N.Y. Mar. 20, 2012); *see also Wilk v. VIP Health Care Servs., Inc.,* No. 10-5530(ILG)(JMA), 2012 WL 560738, at *5 (E.D.N.Y. Feb. 21, 2012) (noting that "while it is true that a claim for quantum meruit or unjust enrichment is precluded when a valid contract governing the same subject matter exists between the parties, a quantum meruit claim may be alleged alongside a breach of contract claim.").

### A. *Marc Lazar Inc.*

Plaintiff contends that if there is no enforceable contract between Plaintiff and the Defendants, Plaintiff pleads the unjust enrichment claim as an alternative to the breach of contract cause of action. *See Wilmoth v. Sandor*, 686 N.Y.S.2d 388, 390 (App. Div. 1999) (where there is a "bona fide dispute

14

as to the existence or application of a contract" both breach of contract and unjust enrichment claims may survive a motion to dismiss).

Here, Plaintiff adequately alleges that Lazar Inc. was enriched by the large diamond collection both through reputational value and profit from sales of certain of the diamonds; that this enrichment was at Plaintiff's expense in that he owned 66% the diamonds in question; and that retention by Defendants of the full value of the large diamond collection would be unjust based on the parties' intent as to the ownership interests involved.  Plaintiff has therefore adequately plead unjust enrichment as an alternative to the breach of contract claim with respect to Lazar Inc.

### B. *Marc Lazar Individually*

As discussed above, Plaintiff fails to substantiate that Mr. Lazar acted in anything other than in his capacity as an officer of Lazar Inc., or adequately allege that Mr. Lazar had the requisite control or domination over the company to establish individual liability and "pierce the corporate veil." Accordingly, Plaintiff's claim of unjust enrichment with respect to Mr. Lazar individually is dismissed.

15

## VI.  PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AS TO BOTH DEFENDANTS

Under New York law, all contracts include an implied covenant of good faith and fair dealing that "includes an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." *Kader v. Paper Software, Inc.,* 111 F.3d 337, 342 (2d Cir.1997) (citations omitted).  A claim for breach of the implied covenant will be dismissed, however, "as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *ICD Holdings V. Frankel,* 976 F.Supp. 234, 243-44 (S.D.N.Y.1997) (citation omitted); *see also Gencor Ind., Inc. v. Ingersoll-rand Co.,* No. 99 Civ. 9225(TPG), 2000 WL 1876651, at ˚9 (S.D.N.Y. Dec. 22, 2000); *EUA Cogenex Corp. v. North Rockland Cent. School Dist.,* 124 F.Supp.2d 861, 873 (S.D.N.Y.2000); *D'Accord Financial Servs., Inc. v. Metsa-Serla Oy,* No, 98 Civ. 5847(DLC), 1999 WL 58916, at ˚2 (S.D.N.Y. Feb. 8, 1999).

Plaintiff asserts that Defendants breached the covenant of good faith and fair dealing, as an alternative to its breach of contract claim, by failing to pay Mr. Usov or turn over the remainder of the large diamond collection.  (Compl. ¶¶ 38-41.) But the factual predicates for Plaintiff's claim are identical

16

to Plaintiff's breach of contract claim.  Plaintiff's claim is
therefore dismissed as redundant.  *See, e.g.*, *Boart Longyear
Ltd. v. Alliance Indus. Inc.*, 869 F. Supp. 2d 407, 420 (holding
that Second Circuit precedent indicates that a duplicative
breach of covenant of good faith and fair dealing claim should
be dismissed as redundant and not allowed as an alternative to
breach of contract claim); *Matsumura v. Benihana Nat'l Corp.*,
465 Fed.Appx. 23, 29 (2d Cir.2012) ("Plaintiffs based their
breach of good faith claim on the same operative facts as their
breach of contract claim; accordingly, the District Court did
not err in dismissing the former claim as duplicative of the
latter."); *Harris v. Provident Life & Accident Ins. Co.*, 310
F.3d 73, 81 (2d Cir.2002) ("New York law ... does not recognize
a separate cause of action for breach of the implied covenant of
good faith and fair dealing when a breach of contract claim,
based upon the same facts, is also pled.").

### VII. PLAINTIFF FAILS TO STATE A CLAIM FOR REPLEVIN

A replevin action may be maintained only by one who has a
superior possessory right to the chattel, although he need not
prove that the defendant has no title to the chattel.  *Honeywell
Information Systems Inc. v. Demographic Systems, Inc.*, 396
F.Supp. 273, 275 (S.D.N.Y.1975) (in an action for replevin, "the
issue is strictly whether plaintiff or defendant has the

17

superior possessory right."); *Benj. H. Tyrrel and 110 Greenwich St. Corp., v. Bedford Computer Corp.,* No. 81-1530, slip op. at 3 (S.D.N.Y. Dec. 15, 1981); 23 N.Y.Jur.2d *Contracts* § 105 (1982), *Paetow v. Van Erp,* 54 A.D.2d 976, 388 N.Y.S.2d 669 (2d Dept 1976).

Mr. Usov has sufficiently pled that he has a 66% possessory right, superior to that of Defendants, to the large diamond collection.  However, "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365, 1369 (N.Y.1992); *see also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2d Cir.1980) ("If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort."); *Spanierman Gallery PSP v. Love,* 2003 WL 22480055, *3 (S.D.N.Y. Oct. 31, 2003) (holding that where Plaintiff's replevin claim arose only from allegations that Defendants did not return object in violation of a contract, Plaintiff failed to allege any distinct duties giving rise to tort liability and replevin claim should be dismissed).  Because Plaintiff does not allege any independent duty by Defendants outside of the purported

18

contracts, Plaintiff fails to adequately state a claim for replevin.

## VIII.   PLAINTIFF'S CONVERSION CLAIM IS DISMISSED AS DUPLICATIVE

Under New York law, conversion is "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53, 53-54 (2d Cir.1993) (per curiam) (citation omitted); *see also Republic of Haiti v. Duvalier,* 626 N.Y.S.2d 472, 475 (N.Y.App.Div.1995).  "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Thryoff v. Nationwide Mut. Ins. Co. (Thryoff II),* 360 Fed.Appx. 179, 180 (2d Cir.2010) (quoting *Seanto Exports v. United Arab Agencies,* 137 F.Supp.2d 445, 451 (S.D.N.Y.2001) (internal quotation marks omitted)). "A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs. Inc.,* 464 F.Supp.2d 191, 199 (S.D.N.Y.2006) (citing *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 559, 600 (1st Dep't 1982); *see also LaRoss Partners, LLC v. Contact 911 Inc.,* 874 F.Supp.2d 147, 163 (E.D.N.Y.2012).

19

A claim for conversion thus cannot lie when it is duplicative of the breach of contract cause of action. *See, e.g., Jain v. T & C Holding Inc.,* No. 10 Civ. 1006, 2011 WL 814659, at *6 (S.D.N.Y. Mar. 3, 2011) (citing *AD Rendon Comm'cns, Inc. v. Lunina Americas,* No. 04-CV-8832, 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007); *Reade v. SL Green Operating P'ship,* 30 A.D.3d 189, 817 N.Y.S.2d 230, 231 (1st Dep't 2006); *Command Cinema Corp. v. VCA Labs. Inc.,* 464 F.Supp.2d 191, 199 (S.D.N.Y.2006) ("A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."); *Leisure Direct, Inc., v. Glendale Capital, LLC,* No. 05-CV-4473, 2010 WL 3782049, at *4 (E.D.N.Y. July 27, 2010) (rejecting plaintiff's conversion claim under New York law as duplicative of breach of contract claim); *NTL Capital, LLC v. Right Track Recording, LLC,* 73 A.D.3d 410, 412, 901 N.Y.S.2d 4, 6 (1st Dep't 2010) ("The fourth [ ] cause of action, for conversion, is duplicative of the breach of contract cause of action"); *Rolls—Royce Motor Cars, Inc. v. Schudroff,* 929 F.Supp. 117, 124 (S.D.N.Y.1996) (a conversion claim will "be deemed redundant when damages are merely being sought for breach of contract") (internal citation and quotation marks omitted). "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty

20

independent of the contract itself has been violated. . . .
[T]his legal duty must spring from circumstances extraneous to,
and not constituting elements of, the contract, although it may
be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 521
N.Y.S.2d 653, 516 N.E.2d 190, 193 (N.Y.1987) (citations
omitted). Here, Plaintiff's claim for conversion is based on the
same facts upon which Plaintiff pled its breach of contract
claim, and Plaintiff does not identify any legal duty
independent of the purported contractual agreements between Mr.
Usov and Mr. Lazar. As such, Plaintiff's claim for conversion
fails as duplicative of its breach of contract claim.

### IX.  PLAINTIFF'S MOTION TO COMPEL DISCOVERY IS GRANTED

A party may file a motion to compel discovery under Rule
37(a)(2), "where another party fails to respond to a discovery
request, or where the party's response is evasive or
incomplete." Fed. R. Civ. P. 37(a)(2). While discovery may in a
proper case be stayed pending the outcome of a motion to
dismiss, "the issuance of a stay is by no means automatic." *In
re WRT Energy Secs. Litig.,* No. 96 Civ. 3610, 1996 WL 580930, at
*1 (S.D.N.Y. Oct. 9, 1996) (Keenan, J.); *see Moran v. Flaherty,*
No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25,
1992) ("[D]iscovery should not be routinely stayed simply on the

21

basis that a motion to dismiss has been filed;" . . . "had the
Federal Rules contemplated that a motion to dismiss under FRCP
12(b)(6) would [automatically] stay discovery, they would
contain a provision."); *In re Chase Manhattan Corp. Secs.
Litig.,* No. 90 Civ. 6092, 1991 WL 79432, at *1 (S.D.N.Y. May 7,
1991) (same).

Here, Defendants have rejected Plaintiff's discovery
requests and instead argued that because Plaintiff's Complaint
states no cause of action, and because Mr. Lazar owns the large
diamond collection in question, discovery should not be
commenced pending the Motion to Dismiss. Defendants are
incorrect, though, that discovery must automatically be stayed
pending a motion to dismiss. In any event, staying discovery
pending the Motion to Dismiss is irrelevant given that the
Motion to Dismiss is denied in part. Discovery shall therefore
proceed accordingly.

## X. CONCLUSION

Based upon the conclusions set forth above, Defendant's Motion to Dismiss is denied in part and granted in part, and Plaintiff's Motion to Compel discovery is granted.  Leave to replead within twenty days is granted.

It is so ordered.

**New York, NY**
**June  18, 2013**

ROBERT W. SWEET
U.S.D.J.

23