UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

GEORGY USOV;

                    Plaintiff,

                                              13 Civ. 818 (RWS)

       - against -

                                                   OPINION

MARC LAZAR AND MARK LAZAR, INC.;

                    Defendants.

-----------------------------------------X

A P P E A R A N C E S:


          Attorneys for the Plaintiff

          KAGAN LUBIC LEPPER LEWIS GOLD & COLBERT LLP
          200 Madison Ave
          New York, NY 10016
          By:  Emil Anthony Samman, Esq.


          Attorneys for the Defendants

          NEIMAN GINSBURG AND MAIRANZ P.C.
          39 Broadway
          NY, NY 10006
          By:  Marvin Neiman, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/2/14

**Sweet, D.J.**

There are several motions currently pending in this action between Plaintiff Georgy Usov ("Plaintiff" or "Usov") and Defendants Marc Lazar ("Lazar") and Marc Lazar, Inc. ("MLI," together with Lazar, "Defendants").

MLI has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") for summary judgment dismissing Plaintiff's complaint. MLI has additionally moved to quash two non-party subpoenas served by Plaintiff.

Plaintiff has moved pursuant to FRCP Rule 15(a)(2) to file an amended complaint ("Amended Complaint") against Defendants. Plaintiff has additionally moved, by letter motion, for clarification on and to compel discovery.

For the reasons set forth below, MLI's motion for summary judgment is denied and motion to quash is granted. Plaintiff's motion to file an amended complaint is granted in part and denied in part. Discovery is ordered to proceed.

**Prior Proceedings**

1

Familiarity with prior proceedings is assumed and were set forth in the June 18, 2013 opinion (the "June 18 Opinion") granting in part and denying in part Defendants' motion to dismiss.

The June 18 Opinion dismissed Plaintiff's first two counts – breach of contract and unjust enrichment – against Lazar individually, but sustained them as to MLI.  The June 18 Opinion also dismissed the third count for breach of covenant of good faith and fair dealing, the fourth count for replevin, and the fifth count for conversion in their entirety, and granted Plaintiff leave to replead within twenty (20) days.

Plaintiff asserts that, due to ongoing settlement negotiations, he did not amend his first complaint (the "Initial Complaint") within the time period allotted by the Court for Plaintiff to replead in order so that he might avoid running up legal expenses.  Because settlement negotiations were ultimately unsuccessful, however, Plaintiff sought Defendants' consent for an extension of time to replead.  Defendants' declined to grant consent.

On January 24, 2014 Plaintiff requested for leave to serve and file an amended complaint, which was opposed by MLI.

2

On February 25, 2014, the parties stipulated and agreed that Plaintiff would file a motion to amend the complaint, along with a proposed amended complaint.

On April 17, 2014, MLI moved to quash two subpoenas served by Plaintiff on two non-parties Malca-Amit USA, LLC and Credit Suisse, AG.  On April 30, 2014, MLI filed its motion for summary judgment.

On June 27, 2014 Plaintiff filed, by letter motion, a request for clarification as to whether a stay of discovery had been imposed pending the resolution of its motion to amend and, in the absence of a stay, to compel discovery.

MLI's motion for summary judgment and motion to quash, and Plaintiff's motion to amend, were heard and marked fully submitted on June 11, 2014.  Plaintiff's motion for clarification and to compel was marked fully submitted on July 23, 2014.

**Facts For Purposes of MLI's Summary Judgment Motion**

The facts for purposes of MLI's summary judgment motion have been set forth in MLI's Rule 56.1 Statement and the

3

Plaintiff's objection to MLI's Rule 56.1 Statement.   The facts
described below are undisputed except as noted.

According to MLI, this action involves a dispute over
the interest in and ownership of certain diamonds acquired by
MLI from Andre Runte (the "Diamonds," for the purposes of MLI's
summary judgment motion).   Plaintiff disagrees, but only to the
extent Plaintiff claims the Diamonds were acquired from Andre
Runte jointly by MLI and Harvey Harris ("Harris"), who was
Plaintiff's predecessor-in-interest.

Harris allegedly owned a two-thirds interest in the
Diamonds.   Harris allegedly assigned his interest in the
Diamonds to Pinnacle Trading Limited ("Pinnacle").   Pinnacle
allegedly assigned its interest in the Diamonds to Mervia
Investments SA ("Mervia").   Mervia allegedly assigned its
interest in the Diamonds to Plaintiff.

According to MLI, Plaintiff alleges that Harris paid
the full purchase price of $1.1 million for the acquisition of
the Diamonds.   According to Plaintiff, his allegation is that
that Harris paid for his interest in the Diamonds but does not
allege that Harris paid the entire purchase price of $1.1
million, which he feels is a matter for discovery.

According to MLI, Plaintiff alleges that "Harris was responsible to fund the purchase and did so with the proceeds from the sale of the 8.36 carat fancy blue diamond (the 'Blue Stone') which he owned." Plaintiff's contention is that his share of the funds used to acquire the Diamonds came from the proceeds of the sale of the Blue Diamond which was owned by Harris, but the specific details regarding the payment for the Diamonds are the subject of ongoing discovery.

MLI contends that Plaintiff alleges that Harris gave MLI the Blue Stone on consignment and that they agreed that instead of MLI paying Harris for the sale, MLI was to use Harris' share of the proceeds to fund the purchase of the Diamonds. Plaintiff contends that his share of the funds used to acquire the Diamonds came from the proceeds of the sale of Blue Stone, though the specific details regarding the payment for the Diamonds are the subject of ongoing discovery.

According to MLI, MLI paid Runte the price to obtain the Diamonds from Runte. Plaintiff contends that the money received by Runte for the Diamonds came from Defendant, but that Harris contributed to those funds used to acquire the Diamonds.

According to MLI, MLI did not use the proceeds from the Blue Stone to purchase the Diamonds from Runte. According to Plaintiff, the Blue Stone, which was owned by Harris, was sold in 2005 for $1,479,000 and that a portion of those proceeds were paid to Runte as part of the purchase price for the Diamonds. MLI contends that it paid Harris approximately $1,250,000 from the proceeds of the Blue Stone. Plaintiff asserts that the Blue Stone was sold in 2005 for $1,479,000, not $1,250,000, and that a portion of those proceeds were paid to Runte as part of the purchase price for the Diamonds.

MLI contends that Plaintiff acknowledges that other than the claimed payment by way of the Blue Stone, Harris did not make any payment towards the purchase of the Diamonds from Runte. According to Plaintiff, a portion of the proceeds from the sale of the Blue Stone were paid to Runte as part of the purchase price for the Diamonds, though additional money could also have been paid by Harris.

According to MLI, while Harris or his companies, Pinnacle or Mervia, should have made the requisite payment on time and could make the requisite payment late at MLI's sufferance, MLI was willing to accept late payment of the requisite amount but only up to the time of the lawsuit being

6

commenced. According to Plaintiff, all amounts required to be paid by Harris pursuant to his agreement with MLI were made.

According to MLI, the ability to make payment is no longer available to Harris or his successors, since the Plaintiff sued MLI and MLI terminated the gratuitous extension of the ability to make the investment late. Plaintiff again contends that all amounts required to be paid by Harris pursuant to his agreement with Defendant were made.

According to MLI, the document that Plaintiff presents evidencing the assignment from Mervia to Plaintiff shows that the most valuable diamond, the 3.16 carat round stone which was improved by polishing to 2.99 carats, was never assigned to Plaintiff. Plaintiff contends that the 2.99 carat diamond was originally owned by Harris, and Harris' interest was subsequently assigned and transferred to Pinnacle, then to Mervia, and then to Plaintiff. Plaintiff further asserts that MLI's president, Marc Lazar, has admitted that MLI owes Plaintiff the proceeds from the sale of the 2.99 carat diamond.

Plaintiff contends that Harris owned a two-thirds interest in the Diamonds and paid valuable consideration to MLI for that interest. Plaintiff further asserts that, in December

7

2007, MLI sold two diamonds – a fancy intense pink diamond for $537,950 and a fancy intense blue diamond for $192,400 – and that MLI paid Pinnacle, as Harris' successor-in-interest, two-thirds of the proceeds from the sale of those two diamonds, which constituted partial performance under the agreement by MLI.

According to Plaintiff, in March and April of 2012, MLI sold three diamonds which Plaintiff owned a percentage of. Those three diamonds were a 0.57 carat fancy grayish violet, natural color, round brilliant, a 1.75 carat diamond, and a 2.99 carat purplish-red round brilliant diamond for a total price of approximately $5,000,000.  Plaintiff contends that Lazar admitted that MLI owned Plaintiff $3,500,000 "give or take" from the sale of those diamonds.

Plaintiff alleges that MLI is holding several million dollars worth of diamonds which Plaintiff owns a two-thirds interest in.

## The Facts For Purposes of Plaintiff's Motion to Amend

Familiarity with facts as alleged in the initial Complaint filed by Usov on February 5, 2013 is assumed and were

8

set forth in the June 18 Opinion granting in part and denying in
part Defendants' motion to dismiss.

The Amended Complaint includes allegations not present
in the Initial Complaint, namely in support of its fraud and
veil-piercing claims.  The new factual allegations of the
Amended Complaint are assumed to be true and are summarized
herein only to the extent necessary to dispose of Plaintiff's
motion to amend.

For at least a decade, MLI has maintained an account
with Bank Leumi USA ("Bank Leumi") in New York (the "Bank Leumi
Account").  (Compl. ¶ 101.)  Upon information and belief, MLI
has used the Bank Leumi Account as its primary operating account
for its diamond business.  Id.  The Bank Leumi Account
experienced large fluctuations in balance from 2002 through late
2012, though typically had an average monthly balance of at
least several hundred thousand dollars.  (Compl. ¶ 102.)  For
instance, during the statement period from September 30, 2009
through October 21, 2009, the account balance ranged from
approximately $26,000 to $3,256,000.  (Compl. ¶ 102.)

Usov and his daughter Elena Harris began to pursue the
amounts owed by Defendants more aggressively in the late summer

and fall of 2012.  (Compl. ¶ 103.)  Around the same time, significant deposits into the Bank Leumi Account were immediately disbursed for "loan debits."  (Compl. ¶ 104.)  For instance, on December 13 and December 14, 2012, just under $4,000,000 was wired into the Bank Leumi Account.  (Compl. ¶ 104.)  By December 18, 2012, all of those funds were already disbursed through a sequence of transfers and loan debits, leaving a balance of less than $20,000.  Id.  That same month, Lazar purchased a home for $1,200,000.  Id.

Plaintiff alleges, upon information and belief, that many, if not most, of the debits from the Bank Leumi Account labeled as "loan debits" were transfers from MLI to Lazar. (Compl. ¶ 106.)  From January 2013, when the Initial Complaint was filed, to the present, the balance of the Bank Leumi Account has been significantly below the typical balances over the preceding years.  (Compl. ¶ 107.)  Plaintiff alleges, upon information and belief, that the transfers on the Bank Leumi Account demonstrate MLI's intention to hide its assets and avoid accounting to the Plaintiff.  (Compl. ¶ 108.)

Plaintiff alleges, upon information and belief, that as a result of such conduct, MLI is under-capitalized and unable to cover its obligations to Plaintiff.  (Compl. ¶ 110.)

10

Plaintiff further alleges that MLI is operated as a mere instrumentality of Lazar, and that Lazar is the sole shareholder and sole officer of MLI, and has exercised and continues to exercise complete dominion and control over the company.  (Comp. ¶ 115.)  Plaintiff alleges that MLI does not abide by typical corporate formalities, and demonstrates a complete and utter disregard for the corporate form and corporate independence.  (Compl. ¶ 116.)

## I.   Defendant's Motion for Summary Judgment is Denied

### a. The Applicable Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id.

11

at 251-52.  A court is not charged with weighing the evidence
and determining its truth, but with determining whether there is
a genuine issue for trial.  Westinghouse Elec. Corp. v. N.Y.
City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990)
(quoting Anderson, 477 U.S. at 249).

            A fact is "material" only if it will affect the
outcome of the suit under applicable law, and such facts
"properly preclude the entry of summary judgment."  Anderson,
477 U.S. at 248.  Disputes over irrelevant facts will not
preclude summary judgment.  Id.  The goal is to "isolate and
dispose of factually unsupported claims."  Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).  "It is ordinarily
sufficient for the movant to point to a lack of evidence . . .
on an essential element of the non-movant's claim . . . . [T]he
nonmoving party must [then] come forward with admissible
evidence sufficient to raise a genuine issue of fact for trial .
. . ."  Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d
Cir. 2008) (internal citations omitted); see also Goenaga v.
March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.
1995) ("Once the moving party has made a properly supported
showing sufficient to suggest the absence of any genuine issue
as to a material fact, the nonmoving party . . . must come
forward with evidence that would be sufficient to support a jury

12

verdict in his favor."). "The evidence of the nonmovant is to
be believed, and all justifiable inferences are to be drawn in
his favor." Anderson, 477 U.S. at 255.

While a party may file a motion for summary judgment
at any time until thirty (30) days after the close of discovery,
the moving party must support its assertions that certain facts
cannot be or are genuinely disputed by:

> (A) citing to particular parts of materials in the
> record, including depositions, documents,
> electronically stored information, affidavits or
> declarations, stipulations (including those made for
> purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish
> the absence or presence of a genuine dispute, or that
> an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment should only be granted after the
nonmoving party has had "'an opportunity to discover information
that is essential to his opposition' to the motion for summary
judgment." Hellstrom v. U.S. Dep't of Veterans Affairs, 201
F.3d 94, 97 (2d Cir. 2000) (quoting Trebor Sportswear Co. v. The
Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989); see also
B.F. Goodrich v. Betkoski, 99 F.3d 505, 523 (2d Cir. 1996)

13

("Rule 56(f) allows a party faced with a motion for summary judgment to request additional discovery, and the Supreme Court has suggested that such a request be granted when the nonmoving party has not had an opportunity to make full discovery.") (quotation omitted).  Courts have found grants of summary judgment premature in circumstances where parties have not had "a fully adequate opportunity for discovery."  See, e.g., Berger v. U.S., 87 F.3d 60, 65 (2d Cir. 1996); see also Sereika v. Patel, 411 F. Supp. 2d 397, 405 (S.D.N.Y. 2006).

### b. The Contentions

MLI principally argues that Plaintiff is unable to show that his predecessor, Harris, paid to acquire his alleged interest in the Diamonds and thus cannot establish any entitlement or any interest in the Diamonds and, as such, the claims must be dismissed.  (MLI Mem. Supp. Mot. for Summ. J. 3.) MLI contends that the proposed amended complaint "demonstrates that Plaintiff's claim of entitlement to an interest in the Diamonds rests solely on the allegation that Harris paid for his interest by means of his share of the proceeds of the sale of another diamond, a 8.36 carat fancy blue diamond."  Id.  MLI further asserts that any claim regarding the 2.99 carat round purplish red diamond must be dismissed because Plaintiff has

14

failed to demonstrate the acquisition of any interest in the
2.99 diamond.   (MLI Mem. Supp. Mot. for Summ. J. 4.)

In response, Plaintiff asserts that MLI's motion comes
at too early of a juncture, as the action is in the very early
stages of discovery.   (Pl.'s Mem. in Opp'n 16.)   Plaintiff
alleges that MLI has been unresponsive to Plaintiff's discovery
requests and that production has purposefully been "extremely
limited."   (Pl.'s Mem. in Opp'n 16-18.)   Plaintiff further
asserts that MLI has not produced documents that directly
concern the claims at issue in this action and the assertions
made by MLI in its motion for summary judgment, including
invoices, purchase orders, proof of payment, proof of deposit,
and copies of MLI's ledgers or corporate records, among other
documents.   Id.

In direct response to MLI's arguments regarding the
8.36 carat blue diamond, Plaintiff specifically contends that
MLI bases its allegations on a cherry-picked and ambiguous email
regarding the sale of an insufficiently identified "blue
diamond" for "a price other than the price which the 8.36 carat
diamond was sold for" and invoices that do not individually or
collectively match the carat size of the 8.36 carat diamond, all
of which have been provided for the first time in connection

15

with MLI's motion for summary judgment.  (Pl.'s Mem. in Opp'n
15.)  Plaintiff argues that there is ample evidence through
written, signed acknowledgments, oral admissions, and partial
performance on the part of MLI to establish that genuine issues
of material facts exist regarding the existence of a binding
agreement and Harris' ownership interest in the diamonds at
issue.  (See generally Pl.'s Mem. in Opp'n 3-15.)

MLI asserts that Plaintiff has not offered a
reasonable basis from which the Court can infer that additional
evidence would raise an issue of material fact.  (MLI's Reply
10.)  In opposition to Plaintiff's arguments regarding the
inadequacy of discovery, MLI further argues that "Plaintiff has
already had the discovery he seeks" and that there are "no other
records that Plaintiff can obtain from Defendant that will shed
any more light on the issue."  (MLI's Reply 10-11.)

### c. Material Factual Issues Preclude Summary Judgment

While the burden is on Plaintiff to "designate
'specific facts showing that there is a genuine issue for
trial,'" the Court must draw all justifiable inferences in his
favor.  Infostar Inc. v. Worcester Ins. Co., 924 F. Supp. 25, 27
(S.D.N.Y. 1996) (quoting Celotex, 477 U.S. at 324 and Anderson,

16

477 U.S. at 255).  Usov has met his burden of demonstrating that there are genuine issues for trial.

Plaintiff's discussion and submission of a June 6 memorandum ("June 2006 Memo") and ownership transfer correspondence alone are enough to cast doubt on MLI's assertion that no ownership interest in the diamonds in question has been established. (See Elena Harris Aff. Ex. 3, 4, 5.)  MLI's arguments to the contrary are unpersuasive.[1]

Additionally, MLI's motion for summary judgment is, indeed, premature.[2]  Plaintiff asserts that he has not had a sufficient opportunity to conduct discovery on the issues under consideration in MLI's motion for summary judgment.  (Pl.'s Mem. in Opp'n 16.)  Plaintiff further argues that early documentation and knowledge of transactions directly between Lazar and Harris, which are pertinent to the issues under consideration, lie

---

[1] For example, MLI's assertion that the "evidence shows" that Harris did not pay for his interest in the diamonds in question by means of his share in the proceeds of the 8.36 carat fancy blue diamond is unpersuasive, as the email submitted by MLI to support its contention that instead MLI paid Harris $1,250,000 for the blue diamond is inconclusive and ambiguous.  (See Lazar Dec. Ex. B.)  Furthermore, MLI's asserts that Plaintiff has no claim to the 2.99 carat round purplish red diamond; however, the June 2006 Memo provided by Plaintiff lists an item described as "3.16 Round Brilliant pu/rd" and includes a note stating that Pinnacle had a 66% ownership interest.  (See Elena Harris Aff. ¶ 29, Ex. 3.)

[2] By its own admission, MLI has operated since February under the belief that there has been a stay of discovery until the resolution of the motion to amend.  (See Neiman June 30, 2014 Letter.)

exclusively in MLI's control and that, despite Plaintiff's
repeated efforts to obtain relevant documents from MLI, MLI has
been uncooperative and refused to produce requested materials.
(Pl.'s Mem. in Opp'n 17-18.)[3]  Plaintiff has sufficiently
satisfied his obligation of showing that further discovery is
needed and that genuine issues of material fact do, indeed,
exist.  See, e.g., Miller v. Wolpoff & Abramson, L.L.P., 321
F.3d 292, 303 (2d Cir. 2003) (citing Gurary v. Winehouse, 190
F.3d 37, 43 (2d Cir. 1999).

MLI's motion is denied in view of the material facts
in dispute and the need for discovery.

## II.   Plaintiff's Motion to Amend is Granted

### a. The Applicable Standard

Leave to amend should be freely given, though district
courts "ha[ve] broad discretion to decide whether to grant leave
to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir.
2000).  Leave to amend is properly denied in cases of "undue

---

[3] Plaintiff lends support to his assertions by pointing to a specific
discovery demand requesting records reflecting the sale of the 8.36 carat
fancy blue diamond pre-dating MLI's motion for summary judgment, and MLI's
response that the demand stating that the request was "Burdensome,
Duplicative, Irrelevant, Overbroad."  (See Schwartz Dec. Ex. 2, 5.)

18

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of the amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  However, courts have emphasized the inquiry into prejudice and bad faith over "mere delay."  Ruotolo, 514 F.3d at 191 (citing to 6 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 1487, at 613 (1990 & 2007 Supp.) (discussing prejudice as "the most important factor" and "the most frequent reason for denying leave to amend")); see also State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).

In determining what constitutes "prejudice," courts in this circuit consider whether the assertion of the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).  When the non-moving party asserts that the movant is acting in bad faith, "there must be something more than mere delay or inadvertence for the court to refuse to allow

19

amendment," such as seeking to derive some unique tactical advantage through their amendment. Primetime 24 Joint Venture v. DirecTV, Inc., No. 99-3307, 2000 WL 426396, *5-*6 (S.D.N.Y. Apr. 20, 2000). Unless the non-moving party demonstrates prejudice or bad faith, courts generally allow a party to amend its complaint. City of New York v. Grp. Health Inc., 649 F.3d 151, 157 (2d Cir. 2011) (citing AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010)).

The burden of establishing prejudice or bad faith falls to the party opposing a motion to amend, as does the burden of establishing futility. See Block, 988 F.2d at 350; see also Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing Harrison v. NBD Inc., 990 F. Supp. 179, 185 (E.D.N.Y. 1998). A proposed amendment is futile if it cannot "withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Therefore, "[f]or the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F. Supp. 2d 273, 282 (S.D.N.Y.

2006) (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)).

However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability

plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" Munoz-Nagel v. Guess, Inc., No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) and Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); see also Williams v. Calderoni, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012).  The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)).

### 1. Plaintiff's First Count for Breach Of Contract And Second Count For Unjust Enrichment Fail As To Lazar Individually

MLI, in its opposition to Plaintiff's motion to amend, explicitly challenges Plaintiff's seven new proposed claims, and through its challenge to Plaintiff's new proposed ninth count for declaratory relief piercing the corporate veil, apparently challenges any claims brought against Lazar in his individual capacity.  (MLI's Opp'n 10-12.)  Plaintiff asserts no new facts in his Amended Complaint that adequately allege or establish that Lazar intended to create individual liability and, as such,

Plaintiff's claims must fail as they did before for the same
reasons articulated in the Court's June 18 Opinion.  (Op. 9-15.)
Plaintiff's claims for piercing the corporate veil must also
fail and are discussed in more detail further below.

### 2. **Plaintiff's Third Count For An Account Stated States A Claim For Which Relief Can Be Granted**

Under New York law, an "account stated is an
agreement, independent of the underlying agreement, regarding
the amount due on past transactions."  G.W. White & Son, Inc. v.
Gosier, 219 A.D.2d 866, 867, 632 N.Y.S.2d 910, 911 (4th Dep't
1995).  As such, an account stated claim requires a showing of
"an agreement between the parties to an account based upon prior
transactions between them . . . ."  LeBoeuf, Lamb, Greene &
MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999)
(citing Chisholm-Ryder Co. v. Sommer & Sommer, 70 A.D.2d 429,
421 N.Y.S.2d 455, 457 (N.Y. App. Div. 1979)).  To state a claim
for an account stated, a plaintiff must plead that "(1) an
account was presented; (2) it was accepted as correct; and (3)
debtor promised to pay the amount stated."  IMG Fragrance
Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411
(S.D.N.Y. 2009) (citations omitted).

When a defendant "retains bills without objecting to
them within a reasonable period of time, or makes partial
payment on the account," an agreement may be implied. Citibank
(S. Dakota), N.A. v. Brown-Serulovic, 97 A.D.3d 522, 523, 948
N.Y.S.2d 331, 332 (2nd Dep't 2012); see also Chisholm-Ryder, 70
A.D.2d at 421, 421 N.Y.S.2d at 457; Rosenman Colin Freund Lewis
& Cohen v. Neuman, 93 A.D.2d 745, 746, 461 N.Y.S.2d 297, 298-99
(N.Y. App. Div. 1983). Both partial payment and assurances of
payment after receipt of an account stated are evidence of
assent to the account stated. See White Diamond Co., Ltd. v.
Castco, Inc., 436 F. Supp. 2d 615, 624 (S.D.N.Y. 2006)
(collecting cases). However, even when "there may be no express
promise to pay," a promise "arises by operation of law" from the
very fact of stating an account. IMG Fragrance Brands, 679 F.
Supp. 2d at 411-12.


Plaintiff alleges that in March and April of 2012,
Lazar informed Elena Harris that MLI had sold three diamonds
belonging to Usov, two of which were from the collection of
diamonds at issue, one of which was owned entirely by Usov.
(Pl.'s Mem. Supp. Mot. to Amend 8.) Plaintiff asserts that
Plaintiff's management company prepared an invoice to Defendants
which was received by Defendants, but never rejected, disputed
or challenged. (See Pl.'s Mem. Supp. Mot. to Amend 9; Zlotnik

24

Dec. Ex. 4; Amend. Compl. ¶¶ 40-54, 68-74.)  Plaintiff further
alleges that during subsequent audio-recorded meetings with
Elena Harris, Lazar confirmed the amounts due to Usov.  (Pl.'s
Mem. Supp. Mot. to Amend 9; Amend. Compl. ¶¶ 51, 54, 71.)

MLI argues that Plaintiff has not established the
elements of the cause of action for an account stated and has
failed to demonstrate an interest in the diamonds at issue in
the instant case.  However, at this stage, Plaintiff, through
his annexation of the invoice, allegations of lack of rejection
of the invoice and acknowledgement that the debt was owed by MLI
during meetings following the mailing of the invoice, has
alleged sufficient facts to establish a claim for an account
stated and survive a motion to dismiss.

> **3. Plaintiff's Fourth Count For Breach Of
> Partnership Agreement, Fifth Count For Breach Of
> Fiduciary Duty and Sixth Count For An Accounting
> Fail To State Claims For Which Relief Can Be
> Granted**

Under New York law, a partnership is "an association
of two or more persons to carry on as co-owners of a business
for profit."  McKinney's New York Partnership Law ("NY P'ship
Law") § 10(1).  New York's provisions on partnership are "for
the most part, default requirements that come into play in the

25

absence of an agreement." Dev. Specialists, Inc. v. Akin Gump
Strauss Hauer &  Feld LLP, 477 B.R. 318, 327-31 (S.D.N.Y. 2012)
(citing Ederer v. Gursky, 9 N.Y.3d 514, 526, 851 N.Y.S.2d 108,
881 N.E.2d 204 (2007)).  In order to demonstrate the existence
of a partnership, a plaintiff must establish four elements: "(1)
the parties' sharing of profits and loses; (2) the parties'
joint control and management of the business; (3) the
contribution of each party of property, financial resources,
effort, skill, or knowledge to the business; and (4) the
parties' intention to be partners.  Kidz Cloz, Inc. v.
Officially For Kids, Inc., 320 F. Supp. 2d 164, 171 (S.D.N.Y.
2004) (citing North Am. Knitting Mills, Inc. v. Int'l Women's
Apparel, Inc., 99-CV-4643, 2000 WL 1290608, *1 (S.D.N.Y. Sept.
11, 2000).  "The requirement that parties have agreed to share
in the profits and losses is 'an indispensable essential of a
contract of partnership or joint venture.'"  Id. (quoting
Steinbeck v. Gerosa, 4 N.Y.2d 302, 317, 175 N.Y.S.2d 1, 151
N.E.2d 170 (1958); see also Kosower v. Gutowitz, 00-CV-9011,
2001 WL 1488440, *6 (S.D.N.Y. Nov. 21, 2001) (stating that an
agreement to share losses as well as profits is an essential
element of partnership).

        Plaintiff relies on the same set of facts to ground
his partnership, fiduciary duty, and accounting claims as he

26

does for his breach of contract claim.  (See Amend. Compl. ¶¶ 57-61, 75-80.)  MLI challenges Plaintiff's claim on the grounds that Plaintiff did not obtain an ownership interest in the diamonds in question and that, even if there had been a partnership between Harris or Pinnacle and MLI, one they transferred their interest, the partnership was dissolved and no longer existed.  (MLI Opp'n 7-8.)

Plaintiff fails to adequately plead the most crucial element of a partnership - the parties' sharing of profits and losses.  Plaintiff asserts that Harris and Lazar intended to share in the profits of the sale of the diamonds in question "based upon predetermined percentages," but does has not sufficiently alleged that the parties agreed to share losses.  (Pl.'s Mem. Supp. Mot. to Amend 10.)  See Scott v. Rosenthal, 97-CV-2143, 2000 WL 1863542, *3 (S.D.N.Y. Dec. 20, 2000) ("an individual 'who has no proprietary interest in a business except to share profits as compensation for services is not a partner or a joint venture'") (citations omitted).  Absent an agreement deciding the question of shared losses, the first essential element of a partnership is missing as a matter of law.  See Kidz Cloz, 320 F. Supp. 2d at 175 (citing Steinbeck, 4 N.Y.2d at 317).  To the extent Plaintiff also alleges the formation of a joint venture, such an allegation would fail for the same

reason.[4]

   As Plaintiff's fifth count for breach of fiduciary duty and sixth count for seeking an accounting are rights attendant to a partnership relationship,[5] these claims too must fail.[6]

####    4.  Plaintiff's Seventh Count For The Imposition Of A Constructive Trust Fails To State A Claim For Which Relief Can Be Granted

   Under New York law, "a constructive trust maybe

---

[4] "The concepts of 'partnership' and 'joint venture' are closely intertwined." Kidz Cloz, 320 F. Supp. 2d at 171.  A plaintiff pleading the existence of a joint venture must also establish as one of its elements a provision for the sharing of both losses and profits; failing to plead such an element is fatal to the establishment of the existence of a joint venture.  See Intel Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd., 909 F.2d 698, 701 (2d Cir. 1990); see also Zeising v. Kelly, 152 F. Supp. 2d 335, 347-48 (S.D.N.Y. 2001).

[5] Partners have a continuing duty to each other as they wind up the business, including preservation of the partnership assets.  See Ajettix Inc. v. Raub, 9 Misc.3d 908, 912, 804 N.Y.S.2d 580, 587 (Sup. Ct. 2005).  If a former partner makes use of a partnership asset, that partner has a fiduciary duty to account to former partners for any benefit that is derived from its use. Denver v. Roane, 99 U.S. 355, 358 (1878); see also NY P'ship Law §§ 43, 73.

[6] Even if Plaintiff had sufficiently alleged a partnership relationship, it is likely that his claims for breach of fiduciary duty would also fail as duplicative.  Under New York law, "a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) (citing Robin Bay Assocs., LLC v. Merrill Lynch & Co., No. 07-376, 2008 WL 2275902, *3 (S.D.N.Y. June 3, 2008) (internal citations omitted); see also Barbara v. MarineMax, Inc., No. 12-368, 2012 WL 6025604, *9 (E.D.N.Y. Dec. 4, 2012) ("If the breach of fiduciary duty claim indeed arises from the duties imposed by the [contract], the claim is duplicative of the breach of contract claim, and is therefore subject to dismissal.").

imposed when property has been acquired in such circumstances
that the holder of the legal title may not in good conscience
retain the beneficial interest." O'Brien v. Dalessandro, 43
A.D.3d 1123, 1124, 843 N.Y.S.2d 348, 349 (2nd Dep't 2007)
(internal citations omitted). When considering whether to
impose a constructive trust over property, courts will generally
look to four factors: "(1) a confidential or fiduciary relation,
(2) a promise, (3) a transfer in reliance thereon and (4) unjust
enrichment." Sharp v. Kosmalski, 40 N.Y.2d 119, 121 (1976).
However, the Second Circuit has noted that "[a]lthough these
factors provide important guideposts, the constructive trust
doctrine is equitable in nature and should not be rigidly
limited." Northern Shipping Funds I, LLC v. Icon Capital Corp.,
921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013) (citing Counihan v.
Allstate Insurance Co., 194 F.3d 357, 362 (2d Cir. 1999)).

        The fourth factor is most important, since the purpose
of the constructive trust is the prevention of unjust
enrichment. In re First Central Financial Corp., 377 F.3d 209,
212 (2d Cir. 2004). As a result, courts have held that a
constructive trust could be imposed even though the first three
elements in a constructive trust claim were lacking. See, e.g.,
Golden Budha Corp. v. Canadian Land Co. of America, N.V., 931
F.2d 196, 202 (2d Cir. 1991) (holding that the "defendants

                            29

[held] property they should not retain in good conscience and
equity, under the circumstances revealed").

However, New York courts have held that "[a]s an
equitable remedy, a constructive trust should not be imposed
unless it is demonstrated that legal remedy is inadequate."  In
re First Central Financial Corp., 377 F.3d at 215 (quoting
Bertoni v. Catucci, 117 A.D.2d 892, 895, 498 N.Y.S.2d 902, 905
(1986)).  When a plaintiff has a contractual claim against a
defendant, there is no reason to believe that a legal remedy is
inadequate and the constructive trust claim is duplicative.  See
Northern Shipping, 921 F. Supp. 2d at 107 (citing In re First
Central Financial Corp., 377 F.3d at 215); see also Physician
Mutual Insurance Co. v. Greystone Servicing Corp., No. 07-CV-
10490, 2009 WL 855648, *11 (S.D.N.Y. Feb. 11, 2004) (dismissing
a constructive trust claim because it arose from the same
operative facts as plaintiffs' contract breach claim).

Plaintiff asserts in a conclusory fashion that he has
plead all four factors to establish the propriety of the
imposition of a constructive trust.  (Pl.'s Mem. Supp. Mot. to
Amend 12.)  As discussed above, however, Plaintiff has failed to
establish a confidential or fiduciary relationship by failing to
adequately plead the existence of a partnership or joint

30

venture.  Additionally, even if Plaintiff had adequately pled
all four of the constructive trust elements considered by
courts, Plaintiff has already stated a colorable contractual
claim against MLI, out of whose set of operative facts
Plaintiff's constructive trust claims also arise.  As such,
there is no reason to determine that a legal remedy is
inadequate and Plaintiff's claim must fail.

### 5.  Plaintiff's Eighth Count for Fraud Fails To State A Claim For Which Relief Can Be Granted

To state a claim for fraud under New York law, a
plaintiff must demonstrate: "(1) a misrepresentation or omission
of material fact; (2) which the defendant knew to be false; (3)
which the defendant made with the intention of inducing
reliance; (4) upon which the plaintiff reasonably relied; and
(5) which caused injury to the plaintiff."  Solow v. Citigroup,
Inc., 507 F. App'x 81, 83 (2d Cir. 2013) (quoting Wynn v. AC
Rochester, 273 F.3d 153, 156 (2d Cir. 2001)).  The plaintiff
must state "with particularity the circumstances constituting
fraud."  Fed. R. Civ. P. 9(b); see also Vaughn v. Air Line
Pilots, Ass'n, Int'l, 377 F. App'x 88, 90 (2d Cir.
2010)(explaining that fraud claims cannot be based on
speculation or conclusory allegations).  Specifically, in order

31

to plead with sufficient particularity, a plaintiff must "(1)
specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements
were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir.
2004); see also Lundy v. Catholic Health Sys. of Long Island,
Inc., 711 F.3d 106, 119 (2d Cir. 2013)("[b]are-bones allegations
do not satisfy Rule 9(b)").

Additionally, when plaintiffs alleges fraud against
multiple defendants, "the complaint should inform each defendant
of the nature of his alleged participation in the fraud."
Divittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242,
1247 (2d Cir. 1987). Furthermore, plaintiffs must "specifically
plead the circumstances constituting fraud with respect to each
of the Defendants." Clayton's Auto Glass, Inc. v. First Data
Corp., No. 12-5018, 2013 U.S. Dist. LEXIS 141444, at *16
(E.D.N.Y. Sept. 30, 2013). Under New York law, however, when
fraud claims are merely duplicative of breach of contract
claims, they should be dismissed. Coppola v. Applied Elec.
Corp., 228 A.D.2d 41, 732 N.Y.S.2d 402 (1st Dep't 2001); see also
W.B. David & Co., Inc. v. DWA Commc'ns, Inc., No. 02-8479, 2004
WL 369147, *3 (S.D.N.Y. Feb. 26, 2004) (explaining that courts
applying New York law do not "recognize claims that are

32

essentially contract claims masquerading as claims of fraud")
(internal citations omitted).

Plaintiff fails to allege specific fraudulent
statements, by whom, where, and when the fraudulent statements
were made, or explain why such statements were fraudulent.
Essentially, Plaintiff's claim of fraud relies on the same set
of operative facts as his claim for breach of contract.

For failure to plead with sufficient particularity,
and due to the overall duplicative nature of the claim,
Plaintiff's eighth count for fraud cannot meet a 12(b)(6)
dismissal standard and thus must fail as to both defendants.

### 6. Plaintiff's Ninth Count For Declaratory Relief Piercing The Corporate Veil Fails To State A Claim For Which Relief Can Be Granted

Where a veil-piercing claim is based on allegations of
fraud, "the heightened pleading standard of Rule 9(b) is the
lens through which those allegation[s] must be examined." In re
Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385,
425 (S.D.N.Y. 2003). Because Plaintiff alleges fraud explicitly
in his Amended Complaint, the Court applies the heightened

33

pleading standards of Rule 9(b) stated above in subsection
II(b)(v) of this opinion.

Under New York law, a party seeking to pierce the
corporate veil must show that (1) the owners exercised complete
domination of the corporation in respect to the transaction that
is attacked in the litigation and (2) that such domination was
used to commit a fraud or wrong against the plaintiff which
resulted in injury.  See Freeman v. Complex Computing Co., 119
F.3d 1044, 1052 (2d Cir. 1997); see also EED Holdings v. Palmer
Johnson Acquisition Corp., 228 F.R.D. 508, 511-512 (S.D.N.Y.
2005) (citing to Matter of Morris v. New York State Dep't of
Taxation and Fin., 82 N.Y.2d 135, 141 (1993)).  Both elements
must be established in order for a court to justify application
of the veil-piercing doctrine.  See EED Holdings, 228 F.R.D. at
512 (citing to TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d
335, 339 (1998)); see also JSC Foreign Econ. Ass'n
Technostroyexport v. Int'l Dev. & Trade Servs., 295 F. Supp. 2d
366, 379 (S.D.N.Y. 2003) (stating that both elements of a veil-
piercing claim must be alleged).  Specifically, New York law
will not allow the corporate veil to be pierced in the absence
of a showing that complete control or domination "was used to
commit wrong, fraud, or the breach of a legal duty, or a
dishonest and unjust act in contravention of plaintiff's legal

34

rights, and that the control and breach of duty proximately caused the injury complained of." Electronic Switching Industries, Inc. v. Faradyne Electronics Corp., 833 F.2d 418, 424 (2d Cir. 1987); see also Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1053 (2d Cir. 1997); Gorrill v. Icelandair/Flugleidir, 761 F.2d 847, 853 (2d Cir. 1985).

A court may consider a number of factors in deciding whether to set aside the presumption of corporate independence are: (1) the absence of formalities and paraphernalia that are part and parcel of the corporate existence; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether a related corporations deal with the dominated corporation at arm's length; (8) whether corporation are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and (10) whether the corporation in question had property that has been used by other of the corporations as if it were its own. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,

933 F.2d 131, 138-139 (2d Cir. 1966).

Plaintiff's emphasis on Lazar's purchase of a second home as suspicious, belief that MLI is undercapitalized, belief that the "loan debits" noted on the Bank Leumi Account statements are transfers from MLI to Lazar, and conclusory statements regarding MLI's corporate governance are insufficient to support his claim.[7]  See Twombly, 550 U.S. at 555.  Therefore, as with the Initial Complaint, Plaintiff has failed to allege an adequate claim for piercing the corporate veil.[8]

### 7. The Court Declines A Finding Of Bad Faith And Prejudice

The burden of establishing prejudice or bad faith falls to the party opposing a motion to amend.  See Block, 988 F.2d at 350.  MLI has not claimed prejudice or bad faith. However, it should be noted, that even if MLI had opposed the motion on ground that it would cause prejudice, such opposition would likely fail.[9]

---

[7] For instance, Plaintiff's assertion that the fact that Defendants have never provided Plaintiff with corporate minutes or resolutions therefore means that therefore such typical corporate records do not exist is flawed and unsupported.

[8] Due to the lack of alleged facts supporting his claim, Plaintiff's claim would also fail under a less rigorous pleading standard.

[9] In determining whether a motion to amend would cause prejudice to a

## III.   Defendant's Motion to Quash

### a. The Applicable Standard

FRCP Rule 45 governs the form and content, service, and general procedures surrounding subpoenas.  "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the court.'"  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

MLI asserts four grounds as bases for their motion to quash.  First, MLI alleges that Plaintiff failed to notify MLI's counsel of the issuance of the two subpoenas in question before they were served on the non-parties, in violation of FRCP 45(a)(4) and that, as to the subpoena served on Credit Suisse, AG, Plaintiff violated FRCP 45(c), or the "100 mile" rule.  MLI further argues that the discovery sought in the subpoenas in question are irrelevant to the claims set forth in the original

---

defendant, courts have generally looked to whether there are significant costs or delays, or whether the motion would prevent the plaintiff from being able to bring an action in another jurisdiction.  Block, 988 F.2d at 350.  As discovery has not been completed and the one new proposed claim for account stated is not of a nature that it would impose inordinate or unusual costs on MLI to oppose, these factors are not met in this case.

complaint or the proposed amended complaint and that Plaintiff
issued the subpoenas in violation of a Court ordered stay on
discovery.

### b. The Two Subpoenas Violate The Notice Requirements of Rule 45

FRCP 45(a)(4) provides:

> If the subpoena commands the production of documents,
> electronically stored information, or tangible things
> or the inspection of premises before trial, then
> before it is served on the person to whom it is
> directed, a notice and a copy of the subpoena must be
> served on each party.

FRCP 45(a)(4) (emphasis added). Rule 45(b)(1) requires a party
issuing a subpoena for the production of documents to a non-
party to "provide prior notice to all parties to the
litigation," which has been interpreted to "require that notice
be given prior to the issuance of the subpoena, not prior to its
return date." Murphy v. Board of Educ., 196 F.R.D. 220, 222
(W.D.N.Y. 2000) (citations omitted) (emphasis added). At least
one court in this circuit has held that notice provided on the
same day that the subpoenas have been served constitutes
inadequate notice under Rule 45. See, e.g., Fox Industries,
Inc. v. Gurovich, No. 03-CV-5166, 2006 WL 2882580, *11 (E.D.N.Y.
Oct. 6, 2006).

MLI relies on (1) the wording in Plaintiff's cover letter enclosing copies of the non-party subpoenas to MLI's counsel that the subpoenas had "already" been mailed to non-parties and (2) the fact that, from the date of the subpoenas, they could have been mailed "as much as 9 days earlier" to support its argument that Plaintiff provided inadequate notice. (Def.'s Mem. Supp. Mot. to Quash 5; Neiman Dec. Supp. Mot. to Quash ¶¶ 10-11.)  Plaintiff, however, contends that copies of the subpoenas were served on MLI's counsel the same day that they were mailed to the third-party recipients, and that he has supplied notarized affidavits of service to that effect. (Schwartz Dec. ¶ 17, Ex. 10.)

By his own admission, Plaintiff provided copies of the subpoenas the same day as they were mailed to the non-party recipients, effectively giving MLI's counsel little to no notice.  (Schwartz Dec. in Opp'n ¶ 17; see also Neiman Dec. Supp. Mot. to Quash Ex. B.)  The requirement that prior notice "must be given has important underpinnings of fairness and efficiency." Cootes Drive LLC v. Internet Law Library, Inc., No. 01-CV-9877, 2002 WL 424647, *2 (S.D.N.Y. Mar. 19, 2002). Plaintiff fails to provide an adequate explanation or argument for how a same-day notification satisfies Rule 45's

39

requirements.  See, e.g., Id. ("[C]ounsel for the [offending party] offered no explanation or excuse for their failure to comply with the rule's strictures.  They did not attempt to defend the timeliness of their notice.  The [offending party's] admitted violation . . . cannot be countenanced.")

Furthermore, the Plaintiff's notification letter is deficient on its face as it notes that the subpoenas had already been mailed out to the non-parties.  (Neiman Dec. Supp. Mot. to Quash Ex. B (cover letter sent by Plaintiff via first class mail stating that it enclosed copies of subpoenas "that have been mailed out").)  As such, the subpoenas in question violate Rule 45(a)(4).

### c. The Subpoena Issued To Credit Suisse Violates The "100 Mile" Rule

Under FRCP 45(c)(2)(A), a subpoena may command "production of documents electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]"[10]  FRCP 45(d)(3)(A)(ii) notes that the quashing or

---

[10] FRCP 45(c) generally provides:

(1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

40

modification of a subpoena is required when it "requires a
person to comply beyond the geographical limits specified in
Rule 45(c)."

MLI asserts that the subpoena served on Credit Suisse,
AG, a Swiss company, at its offices in Switzerland, violates
FRCP 45(c).  (Def.'s Mem. Supp. Mot. to Quash 5.)  As such, it
is beyond the 100 mile limit and is quashed.

### d. The Subpoenas Do Not Impose An Undue Burden

Setting aside the notice and 100 mile rule violations
for the purposes of this section, the subpoenas do not impose an
undue burden on the two non-parties in question.

------------------------------------------------------------

(A) within 100 miles of where the person resides, is employed, or
regularly transacts business in person; or
(B) within the state where the person resides, is employed, or
regularly transacts business in person, if the person

    (i) is a party or a party's officer; or

    (ii) is commanded to attend a trial and would not incur
    substantial expense.

(2) For Other Discovery. A subpoena may command:

    (A) production of documents, electronically stored information,
    or tangible things at a place within 100 miles of where the
    person resides, is employed, or regularly transacts business in
    person; and

    (B) inspection of premises at the premises to be inspected.

FRCP 45(c) (emphasis added).

FRCP 45 requires that a Court quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ Proc. 45(c)(3)(A)(iv).  Defendant, as the movant, carries the burden of proving that the two subpoenas impose an undue burden on the non-parties.  In considering the issue, courts engage in a balancing test to determine whether undue burden exists. Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 299-300 (S.D.N.Y. 2009) (citing 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3d ed. 2008).

Whether a subpoena imposes an undue burden "depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-CV-1382, 2003 WL 23018833, *8 (S.D.N.Y. Dec. 23, 2003) (citations and quotations omitted).  "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." Id.  However, "[b]ecause the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and

assert that compliance with the subpoena would be burdensome
without setting forth the manner and extent of the burden and
the probable negative consequences of insisting on compliance."
Aristocrat Leisure, 262 F.R.D. at 299 (quotation marks omitted).

Neither will "inconvenience alone" justify an order to
quash a subpoena that "seeks potentially relevant testimony."
Kirschner v. Klemons, No. 99-CV-4828, 2005 WL 1214330, *2
(S.D.N.Y. May 19, 2005). However, the "status of a witness as a
non-party to the underlying litigation entitles [the witness] to
consideration regarding expense and inconvenience." Id.; see
also Watts v. SEC, 482 F.3d 501, 509 (D.C. Cir. 2007) (stating
that the "'undue burden' standard requires district courts
supervising discovery to be generally sensitive to the costs
imposed on third parties.").

Plaintiff argues that he served a subpoena on Malca
Amit because MLI refused to produce in discovery the documents
sought in the subpoena. (Pl.'s Opp'n 24.) He further argues
that neither party has the documents subpoenaed from Credit
Suisse, which mainly consist of Harris' bank records, which will
demonstrate transfers of funds between Harris and MLI during the
period when the diamonds in question were acquired Mr. Runte.
Id.

MLI makes only conclusory statements regarding its assertion that Plaintiff cannot make a showing of "the need to burden non-parties in order to obtain relevant discovery." (See MLI's Memo. Supp. Mot. to Quash 7-8.)  In its reply memorandum, MLI does not even list "undue burden" as one of its "separate and independent reasons" for arguing that the subpoenas should be quashed. (See MLI's Reply Mem. 13-14.)  MLI has not met its burden to establish "undue burden."

### e. The Subpoenas Violated the Confidentiality Stipulation

MLI contends that the issuance of the subpoenas attaching certain documents obtained from Bank Leumi (the "Bank Leumi Attachments") violated the Confidentiality Stipulation entered into by the parties and ordered by the Court on March 13, 2014. Plaintiff argues that the bank records were not designated by MLI as being confidential until two weeks after the subpoenas were served, on April 11, 2014. (Schwartz Dec. ¶ 19.)

The sixth clause of the Confidentiality Stipulation clearly states that, with respect to any materials produced prior to the entering of the Confidentiality Stipulation, all such materials may be treated as "Confidential" for thirty (30)

44

days, during which time a party can designate specific pages

"Confidential."  The Bank Leumi Attachments were produced prior

to the entering of the Confidentiality Stipulation.  The

Confidentiality Stipulation was so ordered by the Court on March

13, 2014.  Plaintiff served the subpoenas on March 26, 2014 and

MLI designated the Bank Leumi Attachments as "Confidential" on

April 11, 2014.  According to the terms of the Confidentiality

Stipulation, the Bank Leumi Attachments should have been treated

as "Confidential" until thirty days after March 13, 2014.

However, the subpoenas were issued and served less than two

weeks after March 13 and thus violated the terms of the

Confidentiality Stipulation.  Moreover, MLI properly invoked the

protections of the Stipulation by designating the Bank Leumi

Attachments as "Confidential" within thirty days of March 13.


### f. No Sanctions Will Be Imposed At This Time


MLI has requested that the Court sanction Plaintiff

"for his improper use of his subpoena power."  The Court

declines MLI's request and defers any sanctions until the

conclusion of the action.


### g. Questions As To Whether The Subpoenas Violated A Discovery Stay and Order of Discovery Need Not Be Reached

45

As there is an adequate basis in quashing the
subpoenas on the grounds that Plaintiff violated the notice
requirements of FRCP 45, the "100 mile" rule with regard to
Credit Suisse, and the terms of the Confidentiality Stipulation,
the Court makes no ruling as to whether the subpoenas violated a
stay on discovery or whether they violated a directive to
proceed with party discovery before non-party discovery.

Additionally, in light of the resolution of the
instant motions, any stay on discovery is eliminated and the
parties should proceed with discovery.

## Conclusion

For the foregoing reasons, MLI's motion for summary judgment is denied.  MLI's motion to quash the two non-party subpoenas is granted.  Plaintiff's motion to amend is granted in part and denied in part.  Discovery is ~~ordered~~ to proceed.

It is so ordered.

New York, NY
August 22, 2014

_____
ROBERT W. SWEET
U.S.D.J.

47